Harrison v. Johnston.

HARRISON, COUNTY COURT CLERK, *v.* JOHNSTON, EX'R, *et al.*

(*Knoxville.* September Term, 1902.)

1. **COLLATERAL INHERITANCE TAX.** Bond for—Need not be given by owner of contingent remainder interest.

The owner of a contingent remainder interest, under a will, in personal property subject to the collateral inheritance tax, is not required, by the provisions of the collateral inheritance tax act, to make report of and give security for the tax within one year from the death of the decedent, and failure so to do does not cause the tax on such interest to become immediately payable and collectible. (*Post, pp.* 250-252.)

Act construed: Acts of 1893, ch. 174, sec. 3; Code, sec. 728 (S).

Case cited: *In re* Cagar's will, 111 N. Y., 343.

2. **SAME.** Question reserved.

Whether the provisions of the third section of the collateral inheritance tax act (Acts 1893, ch. 174), requiring the owner of personalty subject to the tax to make report thereof and give security therefor within one year after the death of the decedent, under penalty of causing said tax to become immediately payable and collectible, apply to the owners of *vested remainder interests* in such property was expressly reserved. (*Post, p.* 251.)

3. **SAME.** Remainder—Payable on termination of life estate.

Where the estate subject to the succession tax does not "take effect in possession or come into the actual enjoyment" of the owner until after the expiration of an estate for life, the tax thereon becomes due and payable upon the termination of the life estate. (*Post, pp.* 252-257.)

Case cited: *In re* Cooper's estate, 127 Pa., 435-439.

**4. SAME. Same. Termination of life estate by merger.**

The doctrine of merger applies as well where the remainder interest comes into the possession of the life tenant as when the life estate comes into the ownership of the remaindermen. In either event the life estate is *terminated*. (*Post*, pp. 252-253, 257-260.)

Case cited:   Davis *v.* Williams, 85 Tenn., 650.

**5. SAME. Same. Merger—effect of, on life tenant.**

Where a life tenant, by purchase of the remainder interest, comes into immediate actual possession and beneficial enjoyment of the fee simple estate resultant upon the merger of the two estates, he becomes liable for the collateral inheritance tax upon the value of the remainder interest at the time of the purchase. (*Post*, pp. 252-253, 256-260.)

Act construed: Acts of 1893, ch. 174, sec. 3; Code, sec. 728 (S).

Case cited:   *In re* Cooper's estate, 127 Pa., 435.

**6. SAME. Case in judgment.**

A testator, leaving surviving him a widow, but no children, devised the whole of a large and valuable estate, excepting some bequests not necessary to be noticed, to his widow for life, with remainder over to his niece, if she should survive the widow, and, if not, then to St. Luke's Church. Neither the niece or church made report of the tax or entered into security therefor within a year after the death of the testator. The widow purchased the contingent interests, both of the niece and church, took deeds therefor, and thus became the owner of and took into actual possession the whole estate. Suit by State, in name of county court clerk, against life tenant and remaindermen to collect collateral inheritance tax.

HELD:   1st. That the failure of the niece and church, owners of *contingent* remainder interests in the property, to make report of and enter into security for the tax, did not accelerate the payment of the tax. 2d. That the remainder interest, or estate in remainder, in said property was liable for the succession or collateral inheritance tax, payable, however, on the termination of the life estate. 3d. That by purchasing the estate in remainder the widow terminated her life estate and thereby coming into the actual pos-

Harrison v. Johnston.

session of the whole estate, became immediately liable for the tax upon the present value of the remainder interest, that is, the value of the entire estate less the exempt life estate. (*Post, pp.* 248-260.)

**7. SAME. Jurisdiction of county court not defeated by pendency of administration suit in chancery.**

The fact that an estate is being administered in the chancery court does not oust the county court of its jurisdiction to collect the inheritance or succession tax imposed by chapter 174 of the acts of 1893. Section 22 of said act, making it the duty of the chancery court to see that the succession tax upon estates therein administered is paid, only provides an additional or supplemental remedy. (*Post, pp.* 260-261.)

Code, sec. 754 (S).

**8. SAME. Attorney's fees for collecting taxed as costs.**

The court will tax, as part of the costs against the party held liable for the tax, the reasonable fees of the attorney employed by the clerk of the county court to collect the tax upon inheritances or successions. (*Post, pp.* 261-262.)

Act construed: Acts of 1893, ch. 174, secs. 14-16; Code, secs. 743-748 (S).

**9. SAME. Fees of district attorney taxed as costs and covered into treasury of State.**

The salary paid a district attorney-general is in lieu of all other compensation, and fees taxed in his name in a suit for the collection of inheritance tax are for the benefit of the State, and must be paid into the treasury of the State in the same manner as are other fees and costs taxed in favor of the district attorney-general. (*Post, pp.* 262, 266-267.)

Act construed: Act of 1897, ch. 41.

**10. SAME. Appraisement—Onus on defendant attacking valuation shown by.**

In a suit to collect a succession or inheritance tax, where the petition set forth and averred the value of the estate to be as fixed by an appraisement, the defendants, if dissatisfied with the appraisement, must show the real value of the

Harrison  v.  Johnston.

property subject to the tax; and especially is this so when defendants had actual notice of the appraisement and an opportunity to examine the appraiser after he had exhibited his appraisement.  (*Post, pp.* 264-266.)

FROM BRADLEY.

Appeal from Circuit Court of Bradley County. GEORGE L. BURKE, Judge.

ATTORNEY-GENERAL CATES and JOHN C. RAMSEY, for Harrison.

BROWN & SPURLOCK, for Mrs. Sellers.

CREED F. BATES, for Mrs. Craigmiles.

TRAYNOR & SMITH, for St. Luke's Church.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a bill to collect a collateral inheritance tax, filed in the county court of Bradley county. John H. Craigmiles died in 1899, leaving a widow, but no children. J. E. Johnston and Mrs. Craigmiles, the widow, qualified as executors of his will. In general terms, he gave his property, which was large and valuable, to his wife for life, except some bequests not necessary now to consider; remainder to his niece, Myra Adelia Thompson, if she should be living at the time of his wife's death, and, if she should be dead, then to St. Luke's Church.

Proper steps were taken to execute this will and wind up the estate. Myra Adelia Thompson married B. B. Sellers, and on March 9, 1901, she and her husband sold and transferred to her aunt, the life tenant, Mrs. Craigmiles, all the right, title, and interest which she had or might take under the will of John H. Craigmiles.

The consideration for this conveyance was $50,000, and it was further agreed that all matters in controversy between the aunt and niece were thereby settled. Regular conveyance was made April 16, 1901, with covenants of warranty only as to claims by or under the seller.

St. Luks's Church, through its vestry, also conveyed to the life tenant, Mrs. Craigmiles, all rights and claims it had under said will, in consideration of a conveyance to it of certain real estate by Mrs. Craigmiles, which belonged to the estate of John H. Craigmiles. Steps were taken by which this exchange or transfer was approved and confirmed by this court. The value of the consideration was $8,500, for the interest and claim of the church. Subsequent to these sales and assignments, the clerk of the county court of Bradley county filed this bill in the county court against Johnston and Mrs. Craigmiles, executors, and against the latter individually, and also against Mrs. Sellers and the vestry of St. Luke's Church, to collect an inheritance tax upon the remainder interests, to be assessed on the whole value of the estate, or,

if that could not be done, then upon the amount realized, and for a judgment against the executors or Mrs. Craigmiles, to whom the remainder interests had been transferred, and against Mrs. Sellers and St. Luke's Church. The circuit court, on appeal, adjudged that Mrs. Sellers was liable to an inheritance tax of 5 per cent. on $50,000, and for attorney's fees, under the statute, but dismissed the bill as to the other defendants; reversing the decree of the county court as to St. Luke's Church. The last installment of $10,000 owing to Mrs. Sellers had not been paid when this suit was instituted, and this fund was attached in the hands of Mrs. Craigmiles to answer the judgment in this cause. The amount of recovery against Mrs. Sellers is $2,687.48, besides attorney's fees.

Complainant Harrison, as clerk, and Mrs. Sellers have appealed to this court and assigned errors.

On behalf of complainant clerk it is insisted that the court below should have given judgment against the executors on what is called the "clear value of the estate," to-wit, $185,189.21.

It is contended that the estate is worth that much; that such fact was ascertained by an appraisal in the court below, and so reported without exception or question; and such appears to be the fact from the record. This insistence is based upon the idea that the executors were derelict in their duty as such, in not complying with the provision of the last clause

Harrison v. Johnston.

of section 3 of the inheritance tax act, in the following words: "The owners of any personal estate subject to the tax provided by this act shall make a full report and return the same to the clerk of the county court of the proper county within one year from the death of the decedent, and within that time enter into security for the payment of the tax to the satisfaction of such clerk, and in case of failure to do so the tax shall be immediately payable and collectible."

This provision applies to personal estate covered by life estate, where the remainderman does not elect to pay the taxes before the falling in of the life estate. It is insisted that all such tax as thus becomes immediately payable shall be collected by the executors or administrators, and paid over by them, and, unless the tax is paid or report made as the act contemplates, the argument is that the executors or administrators become individually responsible therefor.

Without stopping to inquire whether this is the proper construction and legal effect of the act in cases of vested remaindermen, we are of opinion that such rule is not applicable when the remainders are contingent, and may never vest in actual possession and beneficial ownership, as in this case.

At the time of John H. Craigmiles' death, it was a mere contingency whether Mrs. Sellers or the church, as between themselves, would ever become beneficially interested in such estate, and this condi-

tion existed up to the time the sales were made by the remaindermen, and their interests and claims were conveyed to the life tenant.

The act does not contemplate that persons holding such contingent interests shall be required to make the report and give the security provided in section 3, and the executors were not, therefore, in default in not requiring the same, and in not collecting the tax as that section provides. *In re* Cagar's Will, 111 N. Y., 343 (18 N. E., 866); Dos P. Inh. Tax Law, p. 247, et seq.

Again, it is insisted that the tax, if not assessed upon the entire value of the estate, should have been assessed on the value of the remainder estate transferred by Mrs. Sellers and the church to Mrs. Craigmiles, which, it is insisted, was $87,702.43, as against Mrs. Sellers and the church, and, as against Mrs. Craigmiles, there should have been assessed a tax upon a value of $135,189.21, the difference between the amount paid Mrs. Sellers and the full value of the entire estate. The contention as to Mrs. Sellers is based upon the idea that she was taxable on the actual value of her interest and claim, and not what she realized for it on the sale; and, as to Mrs. Craigmiles, that by accepting these conveyances from Mrs. Sellers and the church she terminated her life estate, and became seised in fee, on the doctrine of the merger of estates, and that the private agreement of

parties can not be allowed to fix the value upon which the State is entitled to levy its tax.

Again, it is said that it was error not to tax St. Luke's Church upon the value of its claim or interest, or at least upon $8,500, the amount it received for that interest. This upon the idea that the value of the church interests was independent of that of Mrs. Sellers, and it took both to represent the entire values received for their remainders, and that $58,500 represented the actual amount received for such remainders.

On behalf of Mrs. Sellers it is said that in no event did she become liable to an inheritance tax until the termination of the life estate of Mrs. Craigmiles, leaving her surviving, which would make her contingent interest a vested one; that previous to that time she might sell her interest and convey it to any one, and would not thereby make herself or her interest liable to such tax, but the assignee of her interest would hold as she held, subject to the same contingency, and, until the death of Mrs. Craigmiles prior to the death of Mrs. Sellers, no tax would accrue upon her claim or interest in the hands of any one.

Act 1893, p. 348, sec. 3, provides, among other things, that when an estate subject to collateral inheritance tax is to "take effect in possession or to come into actual enjoyment after the expiration of one or more life estates, or a period of years, the tax on such estate shall not be payable nor interest begin

to run thereon until the person or persons liable for the same shall come into actual possession of such estate by the termination of the estate for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner aforesaid."

Then follows the provision for cash advance payment, or giving bond for future payment, as hereinbefore set out.

Now, it is evident that, if there had been no transfer of property between these parties, either Mrs. Sellers or St. Luke's Church would have become entitled to the whole estate at the death of Mrs. Craigmiles. The provision of the will gives it to Mrs. Sellers if she survives Mrs. Craigmiles; if she does not, then to the church. There was a certainty that the whole of it would pass to either the one or the other upon the death of Mrs. Craigmiles.

It is very apparent that in that event, to wit, the death of Mrs. Craigmiles, the entire property would become subject to an inheritance tax, since neither Mrs. Sellers nor the church could receive the property free of the tax.

Can the parties now, by trading among themselves, withdraw this estate from the operation of the inheritance tax law, and defeat its collection? It is conceded the life interest of Mrs. Craigmiles can not be taxed, because, being the widow of the testator, her interest under the law is expressly exempt from

taxation; but it is equally true that the entire estate in remainder would be subject to taxation at the termination of the life of the life tenant, and no transfer or agreement among parties can relieve it therefrom.

The tax will then be collectible, and the question now presented is whether, in view of the transfers made, the period of its collection has been accelerated so as to make it collectible at this time, and, if so, whom shall it be collected from, and upon what basis of valuation? Or, upon the other hand, does the estate remain in Mrs. Craigmiles, untaxable until her death?

The statute says that the tax shall not be payable until the person liable for the same comes into actual possession of such estate, by the termination of the life estate, and then shall be assessed upon the value at the time the right of possession accrues to the owner, provided that the owner may pay before coming into possession upon a valuation at that time, deducting the value of the life estate.

It is to be noted that the act does not prescribe that the life estate must be terminated by the death of the life tenant, and, under the wording of the act, such life estate may be terminated in any other legitimate way. The controlling idea in the statute is that it is only when the remainder comes into possession and beneficial enjoyment that the tax becomes collectible, and it does become collectible at that time.

The Pennsylvania statute upon the subject of an

inheritance tax is very similar to, if not identical·with, ours, and it is said ours is modeled after it.    In the case of the appeal of the commonwealth *In Re* Cooper's Estate, 127 Pa., 435, 439, 17 Atl., 1094, it is said, commenting on this statute and its proper construction:· "It is further apparent that, in estates liable to collateral tax, the commonwealth is entitled to a tax on the entire estate; that when the tenant for life or years, being parent or lineal descendant, etc., is exempt from liability, the whole tax on the entire estate must be paid by the tenant in remainder; that in such cases the time of payment is postponed until the estate comes into actual possession of the tenant liable; that nevertheless if such tenant elect, in anticipation, to pay at the death of the decedent, the tax is assessed on the then valuation of the entire estate, less the value of the estates for life or years; that is, when the tenant of the intermediate estate is not liable, the tenant in remainder has the election either to pay the tax on the entire estate, with interest, when he comes into actual possession, or to pay at the death of the decedent the tax on the then net valuation of the estate in remainder, and in consideration of such anticipated payment, her right to a tax on the intermediate estate is waived by the commonwealth."

Now, while that does not present this exact case, it is sufficiently near in principle to furnish an analogy and rule for guidance.    Here, it is true, there is

no election on the part of the remainder owners to anticipate the end of the life estate; but there is an actual termination of such life estate, which makes the tax due upon the proper basis at the present time.

Let us suppose that Mrs. Craigmiles should have seen proper to surrender and convey her life estate to the remaindermen; can it be doubted that it would in this way have been terminated, and that the entire estate would have come into the possession and enjoyment of the remaindermen, and that it would then become taxable on its entire value?

This did not occur, but what did occur was that the remaindermen conveyed to the life tenant, and the latter, being already in possession, held also under her new title, and became possessed of the remainder as well, and entitled to its beneficial use; and the whole of the estate would have become taxable but for the fact that the statute exempts the life estate of the widow, leaving only the required remainder estate subject to taxation, or, in other words, the entire estate, less the exempt life estate.

It is said that the effect of the transfers by Mrs. Sellers and the church was to vest in their assignee only the contingent interest in remainder which each of them had in the estate, and that the estates thus transferred continued to be, as they were originally, estates in remainder, and contingent. This would, no doubt, be true, if the transfers had been made to a third person. Such third person would merely have

had, under the transfer, the estate in remainder which Mrs. Sellers and the church previously held, and no more; but when the conveyance was made of the remainder to the life tenant, and the two estates were united in one person, Mrs. Craigmiles became entitled to a fee-simple estate, and the effect was to convert the estates into a present estate in possession of Mrs. Craigmiles, the life tenant.

Applying the statute to the facts of this case, the court is of opinion that when Mrs. Craigmiles became the owner of the remainder interest in the property, being already the life tenant, the two estates thereby merged into one, and the remainder vested in possession, to all intents and purposes, and for all beneficial uses, and she might at once dispose of the whole estate in fee. She became thus entitled to the possession as fee-simple owner of the estate, and the beneficial use of it as a whole, and by virtue of these transactions the tax upon the remainder interest became at once payable, and upon an assessment at its value at that time.

It appears from the record that the value of the entire estate, by appraisement, including the life estate and remainder, was $185,189.21, at the date of these transactions, and the value of Mrs. Craigmiles' life estate, not taxable, was at that date $97,486.78, leaving the value of the remainder interest $87,702.43.

The court is unanimously of opinion that, under the facts of this case, the State, as the effect of the trans-

Harrison v. Johnston.

actions between these parties, became at once entitled to an inheritance tax upon the full value of the remainder interest as fixed by the appraisement, to wit, the sum of $87,702.43.

The court is divided as to who should pay this tax. The majority is of opinion that the whole of it should be paid by Mrs. Craigmiles, and upon the following grounds and reason, to wit:  That the life estate and remainder, by virtue of these transfers, became vested in the same person,—Mrs. Craigmiles,—and there was a merger of the two estates into one fee-simple estate in her.    Upon the value of her life estate, which entered into the merger, she is not subject to tax; but upon the value of the remainder she is taxable, because she comes at once into the actual ownership, possession, and beneficial enjoyment.    In *David* v. *Williams,* 85 Tenn., 650 (4 S. W., 8,) it is said:  "The estate for life and the remainder estate, uniting in the same person, would result in a merger of the lesser estate with the greater, and the estate of the children (who in that instance were remaindermen) would become an absolute one," citing 1 Washb. Real Prop., sec. 113.

The court is of opinion that the doctrine of merger applies as well where the remainder interest comes into possession of the life tenant as when the life estate comes into the ownership and possession of the remainderman.    In either event the two estates be-

come merged into one.   20 Am. & Eng. Enc. Law., (2d Ed.), pp. 588, 592.

In 20 Am. & Eng. Enc. Law, p. 590, a distinction is pointed out between "surrender" and "merger," and it is said that "merger" is a wider term than "surrender," in that it takes place when the two estates are united, either in the hands of the re- mainderman or reversioner, or in the hands of the ten- ant of the particular estate, without regard to the method in which the two estates were united, while "surrender" is confined to the relinquishment by the tenant of the particular estate to him in reversion or remainder.   *Fisher* v. *Edington*, 12 Lea, 189.

Under these and other authorities cited in the work above named, the majority is of opinion that Mrs. Craigmiles united the two estates in herself, and merg- ed them into one, and came into actual possession of the fee, and is therefore liable to pay the tax upon the remainder thus acquired by her.

Judgment is therefore rendered against her for a tax of five per cent. upon $87,702.43, the value of the estates in remainder, to the exoneration of Mrs. Sel- lers and the church, which will not be required to pay any tax; and the decree of the circuit court is accordingly modified.

It is said that the original suit for the settlement of the estate of John H. Craigmiles is still pending in the chancery court of Bradley county, and the stat- ute provides that in such cases the inheritance tax

Harrison v. Johnston.

may be collected in such suits, and hence the county court of Bradley county had no jurisdiction to collect this tax.

We think this contention not well made. While section 22 of the act does provide for the collection and retaining of the tax in suits pending in the chancery court, it is evidently intended as an additional remedy to that which exists in the county court, and its purpose is to make certain the collection of the tax before the estate is distributed. That section provides that, if such tax is collected or retained by the clerk and master, it shall still be paid over to the county court clerk, who shall account for it to the State comptroller. But this provision, designed to make certain the collection of the tax, is not intended to oust the county court of its jurisdiction, but merely to supplement it and render it effective. In addition, the series of sales and transfers which render this tax collectible are not matters which pertain to the settlement of the estate in the chancery court, nor are they in any way involved or embraced in that suit, but they are independent transactions, which have taken place out of court, and do not in any way enter into the purposes or purview of the chancery court case.

We are of opinion, therefore, that the proceeding in the county court was authorized and entirely proper.

Acts 1893, secs. 14, 15, and 16, provide that, in case

of litigation over the inheritance tax, the county court
clerk may employ an attorney, whose reasonable fees
shall be taxed up as costs against the party found
liable for the tax, and also a reasonable fee for the
district attorney-general of the district.   Mr. John
C. Ramsey was employed and acted as attorney for
the county court clerk, and, we can see from the rec-
ord, rendered valuable, skillful, and effective service
in the courts below, as well as by brief in this court,
where the State was ably represented primarily by ·
the attorney-general.   We are of opinion that, under
this holding of the majority, Mrs. Craigmiles should
be taxed with reasonable fee for the benefit of said
Ramsey and the district attorney, A. J. Fletcher,
which the court fixes against her at ten per cent. for
Ramsey and   two and one-half per cent. for Fletcher,
upon the principal and interest of the recovery against
her.   This is an addition to the tax of five per cent.,
and interest thereon, as above stated.

The fee provided for A. J. Fletcher, district at-
torney-general, herein, shall be collected in this court
in the name of said Fletcher for the use of the State,
and turned into the treasury of the State, in ac-
cordance with the provisions of chapter 41, acts 1897.
The costs of this cause, including the costs of the
court below and of this court, will be paid by Mrs.
Craigmiles, and proper execution in favor of the par- ·
ties entitled may issue for all of the judgments herein
rendered.

The attachment issued against the balance due Mrs. Sellers is vacated and discharged.

Judgment for the five per cent. tax and interest is rendered in favor of the clerk of Bradley county court; for the fees of John C. Ramsey, in his name and for his use; and for the fees of the district attorney, Fletcher, in his name, for the use of the State.

### DISSENTING OPINION.

MR. JUSTICE WILKES delivered the following dissenting opinion:

I agree with this holding, except to the parties who are liable for the tax. I am of the opinion the transaction between these parties was in effect, and so intended, an agreement entered between the life tenant and remaindermen to anticipate the termination of the life estate, and to reduce the remainder into possession at once, and divide the value of the same between the parties in certain proportions. In other words, the parties virtually agreed to divide the remainder, which appears to be worth $87,702.43, among themselves, in the following proportions to wit:   To Mrs. Sellers, $50,000; to St. Luke's Church, $8,500; to Mrs. Craigmiles, the balance of the life estate, valued at $87,702.43, or $29,202.43.   Each of the parties, under the arrangement between themselves, came into possession and beneficial enjoyment of the remainder in the proportion named, and each should be taxed upon the amounts thus realized by

the arrangement made between themselves. I am of opinion this is the proper adjustment of the rights and equities of the parties, as between themselves. Judge Neil concurs with me in this view, and we dissent from the holding of the majority, placing the whole tax upon Mrs. Craigmiles. It is evident from the record that the amounts received by Mrs. Sellers and the church came to them out of the estate of John H. Craigmiles, and not from any other source. While Mrs. Sellers received hers in money, it is not pretended this money came from any other source than John H. Craigmiles' estate, and the property transferred to the church was in kind, a part of the estate, so that each party (Mrs. Sellers and the church) received and took into possession a part of the estate of John H. Craigmiles.

## ON REHEARING.

MR. JUSTICE WILKES delivered the opinion of the Court.

Several matters are presented to this court upon a petition to rehear, and upon motions oral and in writing. It is said on behalf of Mrs. Craigmiles that the court erred in treating the value of the estate of John H. Craigmiles as $185,188.21, and the value of the taxable remainder as $87,702.43. In support of this contention, it is said that the value of the personal estate turned over to Mrs. Craigmiles was $109,-

000, and the value of the real estate was $23,000, as shown by the statement of the executor, Johnston.

It was charged in the petition that the value of the estate was $185,189.21.    This was not specifically denied, though there was a general denial of the facts stated in the petition.    The appraisement shows the value of the entire estate to be $185,189.21, and of the taxable remainder $87,702.43.    Not only was this not excepted to, but there was no serious effort made to contradict or vary it; and the testimony of Johnston, the executor, is, at most, indefinite and uncertain, not to say evasive, and this is the only testimony substantially impeaching the report of appraisement.

It is said in the next place that the valuation fixed by the appraiser was as of the date of John H. Craigmiles' death, and not of the date of the transaction or appraisement, but we do not so read the testimony of Mr. Knox, the appraiser.

It is said, however, that $24,000 was paid in specific legacies under the will, and upon this the inheritance tax of five per cent. was paid.    In the first place, it appears that this tax was paid by the parties who received the legacies, and not by the executors or Mrs. Craigmiles, or, rather, that these amounts were paid out of the estate, and deducted from the specific legacies.    In the next place, it appears that these amounts were paid before the estate was appraised by Mr. Knox, and these amounts could not, therefore, enter into his appraisement, which was made by him

of date 30th October, 1901. It was incumbent on the defendants to show the real value of the estate, if not satisfied with the appraisement made, and they had ample opportunity to do so, and we can see no reason for now referring it for further proof upon a question where such proof might have been made at the proper time. It is said that defendants had no notice of the appraisement, and this is true, in the sense that no actual service of notice was made upon them of the appraisement; but the record shows that they had actual notice of it, and examined the appraiser, Knox, after he had exhibited the appraisement, and no serious attempt was made to criticise or impeach it.

We can not see, therefore, that the petition makes out a case for a change in our original estimates, nor is there a sufficient reason given for a further reference as to value; and the petition is therefore dismissed, and relief under it denied.

On behalf of the attorney-general it is asked that final judgment for the amounts fixed be given in this court, and that no remand of the cause be made. This, we think, is proper, and final judgments are rendered in favor of Clerk Harrison, Attorney Ramsey, and District Attorney Fletcher, for the use of the State, here; and there is no necessity for a remand, and none is made.

A question is raised by the attorney-general upon his motion to require District Attorney-General

Harrison v. Johnston.

Fletcher to cover into the State treasury the fee of two and one-half per cent. allowed him. The matter has been fully considered and argued before the court on behalf of the State and the district attorney, and the court is of opinion that, under chapter 41 of the acts of 1897, this fee, as well as all others theretofore allowed the district attorneys-general, must be covered into the treasury, and they can receive no compensation in any civil or criminal case, but only the salary of $2,500 per annum, as provided by law. This, we think, is the spirit of the law, and the intent of the legislature, and this fee will be collected by the clerk of this court, and will be paid into the State treasury.