DEEN *et al.* v. CRENSHAW, *County Court Clerk.*

*(Jackson.* April Term, 1913.)

1. **TAXATION. Inheritance tax. Appraisement and judgment.**
Under Acts 1893, ch. 174, sec. 12, providing that any interested
person, not satisfied with an appraisement of property subject
to an inheritance tax, shall have the right to file exceptions
thereto in writing, on giving security to pay all costs, together
with whatever tax shall be fixed by the county court, and
thereupon to have the county court hear such exceptions, that
the county court shall have jurisdiction to determine all ques-
tions of valuation and of the liability of the appraised estate
for such tax, subject to the right of appeal, and that if an
appeal is prosecuted to the circuit court the cause shall be
heard *de novo,* the county and circuit courts have power to
render a judgment for the amount of the tax and costs;
their power not being limited to passing on the correctness
of the valuations contained in the appraiser's report, the pro-
ceeding amounting to a suit regularly instituted, notwithstand-
ing section 14, expressly providing for a suit to enforce the
tax lien on realty at the end of one year after the decedent's
death, and section 15, providing for a suit commenced by
notice or bill where any tax has not been paid according to
law. (*Post, pp.* 128-130.)
Acts cited and construed: Acts 1893, ch. 174.

2. **TAXATION. Inheritance tax. Collection. Attorney's fees.**
Under Acts 1893, ch. 174, sec. 12, providing that any interested
person, not satisfied with the appraisement of property subject
to an inheritance tax, shall have the right to file exceptions
thereto, on giving security to pay all costs, together with
whatever tax shall be fixed by the county court, whereupon
such court shall have jurisdiction of the matter, subject to
the right of appeal to the circuit court, section 14, relative
to actions to enforce a tax lien on realty, which provides that,

if the court adjudges the tax to be due and a charge upon
the real estate, it shall tax up as a part of the costs a reason-
able attorney's fee for the clerk's attorney, and section 16,
providing that clerks of .county courts shall be the agents of
the state for the collection of such tax, that it shall be their
duty when necessary to employ an attorney, and that the fees
of such attorney shall be taxed up by the court as costs
against the delinquent, if he shall be held liable, it was proper
for the county court, on the hearing of exceptions to the ap-
praisement, which were overruled, to tax a reasonable attor-
ney's fee for the clerk's attorney as a part of the costs. (*Post*,
pp. 131, 132.)

Cases cited and approved:   Harrison v. Johnston, 109 Tenn.,
245, 262, 266, 267; Shelton v. Campbell, 109 Tenn., 690.

3. **TAXATION.   Inheritance tax.   Collection.   Attorney's fees.**

On appeal in a proceeding for the collection of an inheritance
tax, in which the county court taxed an attorney's fee for the
attorney of the clerk of the county court, the supreme court
could make such reduction in the fee allowed as would bring
it down to a reasonable amount, and commensurate with the
work done and the responsibility assumed. (*Post, pp.* 131, 132.)

4. **TAXATION.   Inheritance tax.   Collection.   Witness fees.**

In an inheritance tax proceeding, the county court had power
to allow special compensation to an expert witness, who testified
as to the value of real estate. (*Post, p.* 133.)

5. **APPEAL AND· ERROR.   Record.   Questions presented for·
   review.   Expert witness.   Fees.**

In an inheritance tax proceeding, an allowance of $30 to an ex-
pert witness on the value of real estate could not be held
erroneous, where the facts upon ·which the trial court acted
were not before the supreme court. (*Post, p.* 133.)

6. **TAXATION.   Inheritance tax.   Collection.   Costs.**

Where, on the hearing of exceptions to the appraisement of real
property subject to an inheritance tax, by agreement of the

Deen v. Crenshaw.

parties the valuation was reduced to the amount received on a sale subsequent to the appraisement, but not to the valuation insisted on in the exceptions, and the county court thereupon overruled the exceptions, the reduction by agreement, based on a fact transpiring after the taking of the appeal to the county court, did not make the heirs the successful parties on the appeal, and hence costs were properly taxed against them. (*Post, p.* 133.)

7. COSTS.   On appeal.   Collection of inheritance tax.

In a proceeding to appraise property subject to an inheritance tax against the heirs and administrator of a decedent, the county court rendered judgment against the heirs for the amount of the tax on the real estate, and against the administrator for a tax on certain personal property. On an appeal by the heirs alone, the circuit court sustained their exception only to the tax against the personal property. *Held;* that the only contest between the heirs and the State was in respect to the tax on the real estate, and, having lost this contest, they were properly taxable with the costs, notwithstanding the sustaining of the exception as to the tax against the administrator. (*Post, p.* 133.)

8. APPEAL AND ERROR.   Review.   Questions not raised below.

In a proceeding to collect an inheritance tax, where no objection that the tax was not then due was made in the circuit court, the immaturity of the action was waived, and could not be urged on appeal. (*Post, p.* 134.)

Acts cited and construed:   Acts 1893, ch. 174, sec. 4.

9. TAXATION.   Inheritance tax.   Time for collection.

Acts 1893, ch. 174, sec. 4, provides that, if an inheritance tax is paid within three months after the death of the deceased, a discount of five per cent. shall be allowed, and if not paid at the end of one year from the death of a decedent, "at which time it shall be due," interest shall be charged. Section 8 makes it the duty of persons to whom real estate descends to notify the clerk of the county court immediately upon

Deen v. Crenshaw.

the vesting of the estate. Section 14 requires that, when any such tax on real estate shall have remained due and unpaid for one year, the clerk of the county court shall proceed by bill or petition to enforce the lien, and also provides that, if the clerk knows of any good and sufficient reason why payment of the tax has been delayed, he shall not be compelled to file the bill immediately upon the tax becoming due, but in his discretion may postpone the bringing of such suits to such times as he deems proper within the limits of the act. Section 3 requires the owner of personal estate subject to the tax to make a full report and return to the clerk within one year, and within that time to enter into security for its payment, and provides that in case of failure so to do the tax shall be immediately payable and collectible. Section 5 provides for the deduction of the amount of the tax by executors or administrators from legacies or distributive shares, and provides that every sum of money retained by any executor or administrator, or paid into his hands on account of any legacy or distributive share for the use of the State, shall be paid by him without delay to the county clerk. *Held,* that the tax is due at the death of the decedent, the expression "at which time," in section 4, referring to the date of death, and hence, although the clerk of the county court might wait one year before proceeding to collect the tax, he was not bound to do so, and a judgment in a proceeding to collect the tax commenced within one year was not erroneous, although execution thereon should have been stayed until the expiration of one year. (*Post, p.* 135.)

FROM SHELBY.

Appeal from Circuit Court, Shelby County. J. P. YOUNG, Judge.

SWEENEY & SWEENEY, for appellant Deen.

GILMER P. SMITH, for appellee.

Deen v. Crenshaw.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This proceeding was instituted in the county court of Shelby county, by the clerk of that court, pursuant to chapter 174, Acts 1893, to collect a collateral inheritance tax on the estate of Hannah Jane Hall, who had died intestate in the county on the 16th day of March, 1912.

The method pursued was this: On the 17th day of March, the clerk of the county court, in compliance with section 12 of the act, appointed an appraiser to make a valuation of the estate for the purposes of the tax. On the 8th of October the appraiser filed his report; on the 10th of October the parties claiming succession to the real estate filed exceptions to the valuations fixed. The same parties excepted to the inclusion of certain diamonds in the appraisement, because this property was claimed by others, under an alleged nuncupative will, and its ownership was in litigation between the administrator and the persons claiming under the will. The county court overruled all of the exceptions, confirmed the report, and rendered judgment against the claimants of the estate, the present plaintiffs in error, for the amount of the tax fixed by the statute (except for the tax on the diamonds, which was against the administrator, also a party), and also rendered judgment in favor of the clerk for the costs of the cause, including a fee of $30 to H. A. Roynon, introduced as an expert witness on the value of the

real estate, and for a fee to the clerk's attorney, the latter amounting to fifteen per cent. of the total tax.

The plaintiff in error appealed to the circuit court of the county, where the case was tried *de novo*. In that court the tax claimed on the diamonds was disposed of as hereinafter stated. An agreement was made between the parties as to the valuation of two pieces of the real estate, based on a sale made by the heirs after the appraisement. This valuation was lower than that fixed in the appraisement, but higher than the one insisted on in the exceptions. The exception on this subject was therefore overruled, and likewise, all other exceptions. The circuit court thereupon rendered judgment against plaintiffs in error for the amount of the tax on the real estate under the valuations so modified, and also for the costs, including the Roynon expert witness fee, and also the attorney's fee of the clerk's attorney. From this judgment, plaintiffs in error prosecuted an appeal to this court.

The first question which we shall consider arises on the contention that neither the county court nor the circuit court had any power to render judgment for the amount of the tax and the costs, but that, under the form of the proceedings instituted, the only power conferred by law was to pass on the correctness of the valuations contained in the report. Is this contention sound? The answer depends upon a proper construction of sections 12, 14, and 16 of the act.

The statute, after providing for the appraisement, continues, in section 12: And "any interested person

Deen v. Crenshaw.

not satisfied with said appraisement shall have the right at any time within thirty days after such appraisement is filed with the clerk, *to file exceptions thereto, in writing, on giving security to pay all costs, together with whatever tax shall be fixed by the county court, and thereupon to have the county court to hear said exceptions; and, upon such exceptions being filed, the county court shall have jurisdiction to determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the circuit court* (or court of like jurisdiction), *as in other cases. If an appeal should be prosecuted to the circuit court such cause shall be heard de novo.*"

We have italicized the latter half of this section for convenience of reference. It is perceived from this language that the excepting party must give bond for costs, *and for the tax,* as a condition of his litigating the amount of the tax, and obtaining the judgment of the court thereon; that upon this bond being executed, and exceptions filed, the county court shall proceed to hear the questions raised by the exceptions on the amount of the valuations contained in the report of the appraisement, *and also the liability of the appraised estate for the tax claimed* by the State. The act does not provide in terms that a judgment shall be entered embodying the results reached; but this is necessarily to be implied from the fact that the questions mentioned are to be determined, as well as that there are provisions in respect of an appeal to the circuit court, and

a trial *de novo* there. There can be no appeal unless there be a judgment in existence to appeal from. If it was intended that the judgment should cover only the ascertainment of the true valuation, there was no good reason for requiring a bond to cover the amount of the tax. A bond being required in the cause to secure this tax, and the amount of the tax being ascertained in the same cause, the legislature could not have intended that the State should be relegated to an independent suit to recover judgment on the bond. It cannot be denied that judgment must be entered on this bond for the costs. Why should a supplemental action be required on the same bond for the tax?

We conclude, therefore, that by the method indicated a suit was, under the authority of the act, regularly instituted and conducted to its orderly termination, and that plaintiffs in error's adverse contention is not well founded. The legislature might have required more elaborate pleadings; but it had the power to prescribe the practice indicated. The act does, in section 14, contain express provisions for a suit to enforce the tax lien on realty at the end of one year from the death of the decedent. Those provisions, however, are not in conflict with a proceeding of the kind we have before us commenced within the year, in which the necessity for the enforcement of the lien is forstalled by the bond required to secure the payment of the tax. There is no want of harmony in the system, occasioned by these several provisions. The two forms of suit arise under different circumstances, each

to serve a useful purpose.  In an action of the kind
we have in hand, the suit is brought to fix the true
valuation of the property subject to the tax, and as a
necessary consequence the amount of the tax, and in-
cidentally to collect it.  The suit to enforce the lien
presupposes that all preliminary matters have been
ascertained, that the appraisement has been made, and
has been agreed to, because not complained of within
the time and in the manner required by law, therefore
that the amount of the tax has been ascertained by
simple calculation in the office of the clerk, leaving
nothing to be done except the enforcement of the lien
after the expiration of one year from the death.  There
is also another form of suit, which may be commenced
by notice issued by the county court clerk, or by bill
in the county court, at the option of the clerk, as pre-
scribed in section 15.  A suit of the kind we now have
before us is not at all out of harmony with the kind
of action provided for in section 15, as will be readily
perceived upon even a casual inspection of the lan-
guage there used.

The next contention is that attorney's fees were im-
properly allowed as part of the costs; also that, in any
event, 15 per cent. was exorbitant.

We have seen that under section 12 bond must be
given for the payment of costs.  Sections 14 and 16,
which must be construed together, and with section
12, include within the term "costs" a reasonable fee
for the clerk's attorney.  Under section 16, the suit
runs in the name of the county clerk, and it is made

his duty to employ an attorney whenever necessary; and in this connection it is further provided that if the State lose its suit, or the amount cannot be collected from the judgment debtor, the State is to be taxed with a reasonable attorney's fee, unless the suit brought by the clerk be frivolous or malicious, in which event the fee must be paid by himself. Section 14 not only provides for a fee for the clerk's attorney, to be taxed as costs for service in the county court, but also that on appeal a fee shall be taxed up as costs in the appellate courts, in favor of the State's attorney upon whom the duty of conducting the case in those courts is devolved—such latter fee, when collected, to be covered into the treasury of the State. *Harrison* v. *Johnston,* 109 Tenn., 245, 262, 266, 267, 70 S. W., 414. See, also, *Shelton* v. *Campbell,* 109 Tenn., 690, 72 S. W., 112.

As to the amount of the fee, after a careful examination of the record, showing the nature, character, and extent of the work performed by the attorney for the clerk, we think he would be amply compensated by an allowance equal to seven and one-half per cent. of the amount of the tax adjudged, and the judgment of the trial court will be corrected accordingly. It is always within the power of the court to make such reductions, in this class of cases, as will bring the fee down to a reasonable amount, one commensurate with the work done and the responsibility assumed.

As to Roynon's witness fee, there is no evidence in the record on which we can base any correction of

the action of the trial judge in respect of this matter. It is recognized in our cases that special compensation may sometimes be allowed for expert witnesses. We cannot say that the trial judge was in error in allowing the amount he did, without facts before us showing such error.

Plaintiffs in error insist they should not have been taxed with the costs at all, since, as they claim, they were the successful parties in the county court. They resisted the tax on the ground that the valuation of the property was too high. The only reduction they secured in the circuit court, on the real estate, was by agreement of parties based on a fact which transpired after the appeal to that court, a sale by them of part of the property, and this, too, as already said, at a figure higher than the valuation they put upon it in their exception. A claim of victory could not be justly based on this fact.

This leaves only the question arising on the inclusion of the diamonds in the appraisement. Stating the facts a little more at large upon this subject than previously, they are as follows: Hannah Jane Hall owned some diamonds, which were appraised at $1,000. After her death the North Memphis Savings Bank was appointed administrator. One Bridget Donohue claimed that Mrs. Hall gave her these diamonds. There is now a replevin suit pending between her and the administrator for the possession of the diamonds. The county court, as we construe its judgment, held the administrator liable for the tax on this part of the

property, and not appellant.   The appeal was by the
plaintiffs in error, and not by the administrator.   On
this state of facts the circuit judge simply held that
as the ownership of the diamonds was in dispute, and
there was no claim against plaintiffs in error in re-
spect thereof, he would sustain their exceptions on
this subject.   These facts are not sufficient to show
that plaintiffs in error were the successful parties in
the sense of the statute applicable to the taxation of
costs, so as to cast the costs on the State.   The only
contest the plaintiffs in error had with the State was
in respect of the amount of the tax on the real estate
descended to them.   In this contest, as we have seen,
they lost.

It is insisted that the judgment could not be prop-
erly rendered because the tax was not due when the
suit was instituted, or even when the judgment was
rendered in the circuit court.   No objection of this kind
was made in the circuit court, and hence the imma-
turity of the action, if it existed, was waived, and could
not be urged here.   However, the state of the law upon
the question of the date of the accrual of the tax is
this:  Section 4 of the act provides:  "If the collateral
of the inheritance tax shall be paid within three months
after the death of the decedent; a discount of 5 per
cent. on the amount of the tax shall be made and al-
lowed; and if said tax is not paid at the end of one
year from the death of a decedent, at which time it
shall be due, interest shall then be charged at the rate
of six per centum per annum on such tax."   The ex-

pression "at which time" refers to the date of the
death of the decedent as the point of time which marks
the maturity of the tax debt; but an indulgence of
one year is given before interest can be charged, and
a bonus of 5 per centum is offered for a voluntary
payment within three months. Moreover, it is not
made obligatory on the clerk to proceed in the collec-
tion until after the expiration of one year. This con-
struction is supported by other parts of the act. Un-
der section 8, it is made the duty of owners of real
estate descended to notify the clerk immediately upon
the vesting of the estate. Under section 14, it is made
the duty of the county clerk, "whenever any such tax
on real estate shall have remained due and unpaid
for one year," to proceed by bill or petition in the
county court to enforce the lien for the payment of
the tax. In the same section, it is further provided:
"If said clerk knows of any good and sufficient reason
why the payment of such tax has been delayed, he
shall not be compelled to file such bill immediately
upon said tax becoming due, but may, in his discretion,
postpone the bringing of such suit to such time as
he deems proper, within the limits of this act." By
section 3, last sentence, the same indulgence is given
in respect of the tax on personal property; but un-
der section 5, through the action of an executor, or ad-
ministrator, the collection may be made within the
year, or in the case of specific personal property the
failure to give bond for the tax under section 3 will
result in the necessity of the clerk's making immediate

collection.    Therefore, under a true construction of section 4, while the clerk might have given indulgence until the expiration of one year from the death of Hannah Jane Hall, he was not bound to do so.    Moreover, as we have already seen, the filing of the exceptions, accompanied by the filing of the bond for the purpose of contesting the appraisement and to secure the payment of the tax, was the beginning of a litigation which in ordinary course would eventuate in a judgment for the tax, or its voluntary payment; but no interest could be charged until the expiration of the year.    From this it is apparent that the trial judge, although properly entering judgment in due course, should have stayed execution until the expiration of one year from the death of Mrs. Hall; no reason having been shown by affidavit, under the Code, for an earlier issuance.    No practical injury, however, has been suffered by plaintiffs in error, since the year had fully expired without the issuance of an execution when the cause was tried here.

It results that, after making the modification as to the attorney's fee above directed, the judgment must in all other respects be affirmed.