CARMACK *et al. v.* FIDELITY-BANKERS TRUST Co. *et al.*

(*Knoxville*, September Term, 1943.)

Opinion filed January 8, 1944.

KENNERLY & KEY and JENNINGS, O'NEIL & JARVIS, all of Knoxville, and JOE M. CARDEN, of LaFollette, for complainant.

AYRES, BROUGHTON & PARKEY and FOWLER & FOWLER, all of Knoxville, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The petition which presents the questions involved on this appeal, was filed in the cause when the *procedendo*

on a former appeal had been filed in the Chancery Court. The petitioners were Mary Carmack, complainant in the former cause, and her attorneys, Joe M. Carden, John Jennings, Jr., and W. P. O'Neil. The respondents were the American Red Cross and Fidelity-Bankers Trust Company and Lindsay Young, the last two being made respondents as executors of the estate of James C. Carmack, deceased. The petition was filed with a dual purpose:

(1) Against the American Red Cross to compel it to carry out its part of a compromise agreement which it had made with Mary Carmack, and

(2) Against the executors to secure the allowance and payment of fees to petitioning attorneys out of the assets of the estate.

The fees of these attorneys due from Mary Carmack for services rendered to her had already been paid and were not a matter presented in the petition.

After the hearing in the Chancery Court, which was had on oral testimony, according to the forms of law, the Chancellor entered a decree by which, briefly stated:

(1) He ordered the American Red Cross to carry out the terms of its compromise agreement with Mrs. Carmack, and

(2) He allowed her attorneys a total fee of $25,000.00, of which two-thirds, or $16,666.00, was to be paid by the executors out of the assets of the estate in their hands.

 The American Red Cross alone made a motion for a new trial, and after it was overruled, undertook to perfect an appeal from the decree of the Chancellor. The hearing having been on oral testimony, motion for new trial and authentication of the transcript by the Chancellor were necessary to make them a part of the record on appeal, according to the provisions of the statute. The transcript was not authenticated by the Chancellor,

and, although an attempt was later made to remand the case and supply the defect, the Court of Appeals correctly held that the appeal of the American Red Cross was on the technical record only. That Court also held that it might, under the authority of Code Section 9055, look to the transcript of the record sent up on the former appeal in deciding the questions presented by this appeal from a decree on a petition which was filed in the same cause.

Petitioners say that the Court of Appeals misapplied Code Section 9055, because, first, the present proceeding under the petition for counsel fees, etc., is a new and independent suit; and, second, is not a case "brought up again for correction of errors," to quote the language of this Code Section.

We think this proceeding by petition filed in the same cause is a supplemental proceeding in that cause and is not an independent suit. And, if it should be conceded that, not being brought "for correction of errors," this Code Section, construed strictly, does not apply, we are of opinion that the Court of Appeals properly looked to the former record under the rule approved in *Davis* v. *Robertson,* 165 Tenn., 609, at page 614, 56 S. W. (2d) 752, at page 753, in which it was said, opinion by Chief Justice Green, that, "the court may take judicial knowledge of facts which it has learned on an earlier hearing of the same case and what it has done at a previous hearing of that case. 23 C. J., 61; 15 R. C. L., 1111; Wigmore on Evidence, section 2579; Jones Commentaries on Evidence, section 431." And we do not think that the addition of new parties affects the applicability of this rule.

About three months after the Chancellor's decree had been handed down, the executors, who had not made a motion for new trial, as was required as a preliminary

to the perfection of their appeal, filed the record in the Court of Appeals for a writ of error.

The Court of Appeals reversed the Chancellor's holding that the petitioning attorneys should be allowed a fee of two-thirds of $25,000.00, to be paid out of the assets of the estate in the hands of the executors, and held that these attorneys had rendered services to Mary Carmack only, that they were not entitled to any compensation from the estate whatever. This Court granted *certiorari* and argument has been heard.

The sole question for determination is whether the Chancellor was right in holding that the petitioning attorneys, who had primarily represented Mrs. Carmack, were entitled to be paid fees in the sum of $16,666.00 out of the funds in the hands of the executors, or the Court of Appeals was right in adjudging that no part of their compensation should be paid from these funds of the estate.

The Chancellor heard the case on the entire record, including oral testimony by a number of attorneys as to the value of the services rendered. The Court of Appeals looked only to the technical record, including the record in the cause on the former appeal.

Numerous assignments of error are made by the petitioners, but we think that for the disposition of this appeal, it is unnecessary to discuss them separately. We therefore discuss those assignments only which we consider of determinative importance.

The executors did not see fit to perfect an appeal by making a motion for new trial, nor to preserve a transcript of the evidence which the Chancellor heard on oral testimony, except by filing the record for writ of error: The briefs and argument on behalf of the American Red Cross and the executors, filed in response to this pe-

tition for *certiorari*, deal solely with the question of the allowance of the attorneys' fees out of the funds of the estate in the hands of the executors.

We cannot agree with the Court of Appeals that these attorneys have rendered service only to their client, Mrs. Carmack, and have rendered no service to the executors, and thus ultimately, to the American Red Cross, the principal other beneficiary. It seems to us, on the contrary, that without the acquiescence and co-operation of these attorneys, there would be no assets in the hands of these executors, and the American Red Cross would in all probability have received no benefit from this estate whatever.

When her husband died, Mrs. Carmack first dissented from the will, then filed suit to set aside the trust, which was set up to deprive her of her widow's share in the estate, and then filed a suit to contest the will. After she had won the suit to set aside the trust, but before its hearing on appeal, she entered into a compromise agreement under which she agreed to dismiss the will contest. The jury in the trust suit had found that, at the time of the execution of the trust agreement, Carmack was insane and that he executed the trust as the result of fraud and undue influence.

It is conceded on the brief of counsel for the executors, as well as in the opinion of the Court of Appeals, that if Mrs. Carmack had pursued the will contest in Anderson County, there is every reason to believe that the same evidence that had led a jury to find that Carmack was insane and unduly influenced at the time he made the trust, would have been effective to convince a jury that when he made the will, he was also insane and unduly influenced. It is to be remembered that his mental condition was identically the same at the time of the execu-

tion of both these instruments, as they were made simultaneously, on the same day, and were parts of the same transaction.

The only reasonable presumption is that, if Mrs. Carmack had pursued the contest of the will, the result of the entire litigation would have been that an earlier will than the will of 1939 would have been set up as the true will. In this earlier will the American Red Cross was not named and would have taken no part of the estate whatever. On the other hand, Mrs. Carmack, by dissenting from the earlier will, would have received all that she received under the compromise agreement, except perhaps the fee simple title to the home place in Oliver Springs. It appears, therefore, that in advising their client to make the compromise, Mrs. Carmack's attorneys acted directly in the interest of the American Red Cross and preserved for it its share in the Carmack estate. We do not mean to imply that they acted against the interest of their client in so doing. The compromise settlement appears to have been for the best interest of both parties.

The effect of the compromise was to avoid the trial of the question of Carmack's sanity, and by agreement to set up as his true will a document which was vulnerable and open to attack as the trust which had theretofore been set aside.

In the view we take, Mrs. Carmack and the American Red Cross, being the two beneficiaries of the will, represented a class, and between them they divide the net amount of the common fund *under the compromise agreement*. Without this agreement, the American Red Cross would have taken nothing at all, and without the co-operation of Mrs. Carmack's attorneys, there would have been no compromise agreement. So, it may be fairly said

that the American Red Cross is a beneficiary of this estate by virtue of the services of Mrs. Carmack's attorneys, and the fact that there is a common fund in the hands of these executors for distribution, is a direct result of the same legal services.

The very unusual and peculiar facts of this case remove it from the scope of the decision in *Ensley* v. *Ensley*, 105 Tenn., 107, 58 S. W., 288, where there were a number of legatees, all of whom employed counsel, and it was held that those attorneys who had rendered services which differed from those of other attorneys in the case only in that they had brought the suit, which was advantageous to all parties, and in so doing represented complainants and not defendants, were not entitled to compensation out of the common fund.

In *Trammell* v. *Trammell*, 162 Tenn., 1, 32 S. W. (2d), 1025, 35 S. W. (2d), 574, compensation was denied because the attorneys had rendered their services in asserting rights in opposition to the will and not in support of it. In the present case, Mrs. Carmack's attorneys have gone to the extreme length of dismissing a will contest which would have been successful, in order to uphold the will and protect the rights of the American Red Cross. The services which Mrs. Carmack's attorneys rendered to the estate, and so ultimately to the American Red Cross, were indispensable, and in addition to those rendered by the attorneys, of either the executors or the American Red Cross, who could not alone have brought about the agreement of compromise.

The Court of Appeals was of opinion that *Smith* v. *Haire*, 138 Tenn., 255, 197 S. W., 678 (relied on before the Court of Appeals and here by petitioning attorneys) is not in point. In that case, compensation was allowed out of assets of the estate to an attorney employed by

one of the heirs to contest a false will and set up a true will. After the litigation was successful, the compensation of the contesting attorney was allowed out of the estate. We are of opinion that, to the extent that the attorney's contract was with one of the beneficiaries and not the personal representatives, and that compensation was allowed him on *quantum meruit* out of the estate, the case is authority for granting the relief sought by petitioners here.

Moreover, in addition to the grounds we have stated, which seem to us to justify an allowance to petitioner by a Court of Equity from this fund, we are of opinion that the right of petitioners to fees from the funds of this estate may be sustained upon another and well recognized ground. The trust instrument executed by Carmack covered and conveyed to the Trustee in this case practically all of the property of Carmack. Little of proportional value was left to pass under his will to his executors. The legal rights and claims of Mrs. Carmack, his widow, were thereby disregarded and destroyed. The situation was analogous to that arising when a debtor conveys all of his property to secure preferentially one or more creditors, or for the benefit of a wife, or others of his choosing. It is unnecessary to cite authority for the proposition that when, under such circumstances, a deferred creditor, or claimant, employs attorneys who successfully attack as fraudulent such a conveyance and procure it to be set aside, these attorneys, although employed by and acting primarily for their client, are entitled to be paid reasonable fees from the estate, funds or assets which had been fraudulently attempted to be conveyed.

In application of this well recognized principle, we think it clear that when petitioners, representing a claim-

ant whose rights had been adversely affected by this trust conveyance, successfully attacked and caused to be set aside as fraudulent this transfer, a claim to compensation for their legal services from the assets involved became fastened thereon. So far as this right is concerned, it is immaterial how or to whom these assets from which this preferential illegal encumbrance has been removed may be thereupon decreed or distributed. The principle that attorneys attacking and setting aside as fraudulent a preferential conveyance, at the instance of an injured claimant, are entitled to an allowance from the fund involved of reasonable counsel fees for their services thus rendered, is so well settled that citation of authorities is unnecessary. Cases cited in the opinion of the Court of Appeals recognize this principle. And, the case before us, as was said in *Grant* v. *Lookout Mountain Co.,* 93 Tenn., 691, at page 701, 28 S. W. 90 at page 93, 27 L. R. A., 98, ''comes within the rule laid down by this court, that counsel are entitled to a lien upon the fund recovered (or *un*covered, as here,) by their clients for reasonable fees.'' Chancellor Cooper in an early case discusses this ''rule'' or ''doctrine,'' with his usual thoroughness. See *Whitsett* v. *City Building & Loan Ass'n,* 3 Tenn. Ch., 526.

This brings us to the remaining question of the reasonableness of the allowance fixed by the Chancellor.

This is to be determined upon a consideration of all the facts and circumstances presented by the record, primarily the amount involved and available, the nature of the responsibility assumed by the attorneys, the character and extent of the services which they have performed, not only in the technical litigation itself, but also in matters arising out of and incidental to such litigation.

These matters are within the domain of legal knowledge, and, therefore, opinion testimony by lawyers

of experience and reputation is admissible as expert testimony to assist the Court. But the Court, on the theory that judges have first hand experience and knowledge of the subject, is the final arbiter, and is not bound by the opinion of the professional legal experts who testify.

"The allowance . . . should be an exercise of judicial discretion, founded' upon the knowledge of the court making the allowance of the *real value of the services performed,* and should not be rested upon the testimony of experts as to the *general value* of professional services." (Emphasis ours.)· *Hitchcock* v. *American Pipe & Const. Co.,* 90· N. J. Eq., 576, 107 A., 267, 269.

Except for these general principles, which are recognized both in the decisions of this Court and in those of courts of other jurisdictions, there is no formula, or set rule, by. which the value of legal services may be appraised, and the amount which would represent reasonable compensation determined.

▆▆ Petitioners say that, since this issue was heard and determined by the Chancellor on oral testimony not preserved by bill of exceptions, a conclusive presumption applies on appeal that the decree was sustained by the evidence. This is the general rule (see *Morrell* v. *Fire Ins. Co.,* 168 Tenn., 137, 76 S. W. (2d), 317; *Rose* v. *Brown et al.,* 176· Tenn., 429, 143 S. W. (2d), 303), to which, however, an exception applies when the question is the reasonableness of an allowance of fees to solicitors. Professional expert testimony, when this is the question, is advisory only, as heretofore indicated. It is the reserved discretionary prerogative of the Court itself to fix the fees of solicitors· in causes pending, or which have been determined by the Court. This is the rule recognized generally (see, in addition to *Hitchcock* v. *American Pipe, etc., Co., supra,* annotations in 49· A. L. R., 1150 et seq.),

and is in accord with our own cases. In *Parkhurst & Wilkinson Co.* v. *Etna Coal Co.* (Tenn. Ch. App.), 54 S. W., 58, 62, the Court said: "We see no error in the action of the learned special chancellor in fixing the fee of the solicitors of the assignee, instead of referring the matter to his master, to take proof and report thereon. The matter of the fees chargeable by attorneys in cases of this character *is at last to be determined, when contested, by the court. The opinion of any number of witnesses as to the amount of such fees is not controlling upon the court.*" (Emphasis ours.)

In the very recent case, as yet published only in 172 S. W. (2d), 1007, 1012, of *Fiedler* v. *Potter,* this Court reviewed and greatly reduced the amount of attorney fees as decreed by the Chancellor, and affirmed by the Court of Appeals; and, too, in that case, as in this, the trial Court had fixed the amount after hearing expert opinion testimony by attorneys which had not been properly preserved by bill of exceptions. The identical insistence was there made that a conclusive presumption applied on appeal in favor of the amount decreed below. But this Court said, "It will be assumed that this testimony supported the amounts decreed in this regard, but whatever it was, it is well settled that this Court is not bound by such testimony and may wholly disregard it when in its judgment the fees allowed are excessive or inequitable. See *Cooper & Keys* v. *Bell,* 127 Tenn., 142, headnote 5, 153 S. W., 844, Ann. Cas. 1914B, 980; *Deen* v. *Crenshaw,* 128 Tenn., 123, 158 S. W., 987, and other cases. . . . We have reviewed this record and in the exercise of our reserved discretion, hold that an allowance against the defendants below of ten per cent of the total recoveries should be decreed and no more."

There is no evidence to which we have access to determine the exact amount of the gross estate. The original bill stated it to be $120,000.00, which was not denied. In his decree, allowing compensation to the Trustee, the Chancellor found that one per cent of the estate amounted to $1,100.00. We therefore, conclude that the Chancellor found the total gross estate to be in the amount of $110,000.00. Of this amount, Mrs. Carmack receives one-third, or $36,666.00, from which she has had to pay her attorneys $8,333.00, or a little more than twenty per cent.

In view of our finding, as hereinbefore set forth, of the benefit that the executors and the American Red Cross have derived from the services of Mrs. Carmack's attorneys, and in accord with the rule we have held to be applicable, we think it proper that some additional compensation should be paid these attorneys out of the estate, and that the share of he American Red Cross, the only other beneficiary, should be charged with approximately the same proportion of legal fees as has been that of Mrs. Carmack. It appears that out of its share, amounting to $73,334.00, the American Red Cross has paid to its attorneys fees of $10,000.00. From our review of the record as a whole, we are of opinion that, in view of the services rendered, and the allowance to the other attorneys, which has not been contested, the executors, out of the estate, should pay the petitioners an additional $8,333.00, and the cost of this appeal, and it is so ordered.

Thus modified, the Chancellor's decree is affirmed, and that of the Court of Appeals reversed.