Paul MONTCASTLE, et al,
Plaintiffs-Appellants,

v.

Lendon BAIRD and Juanita Baird,
Defendants-Appellees.

Eleanor Baird EBLEN, et al,
Plaintiffs-Appellees,

v.

ELK VALLEY COAL & IRON COMPANY, et al, Defendants-Appellees.

Mrs. Jessie WALLACE, et al,
Plaintiffs-Appellees,

v.

Lendon BAIRD, et al,
Defendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Aug. 19, 1986.

Permission to Appeal Denied by
Supreme Court Nov. 24, 1986.

Maclin P. Davis, Jr., Waller, Lansden, Dortch & Davis, Nashville, and Joseph G. Coker, Jacksboro, for plaintiffs-appellants.

Keith McCord and Jerome Templeton, Knoxville, for defendant-appellee Lendon Baird.

Norbert Slovis, Lockett, Slovis & Weaver, Knoxville, for plaintiffs-appellees Jessie Wallace, et al. and Eleanor Baird Eblen, et al.

J. Stephen Hurst, Rogers, Hurst & Kruschenski, LaFollette, for appellees-respondents David B. Rogers, Dottie C. Bryant and Robert Baird.

Roy L. Aaron, Hodges, Doughty & Carson, Knoxville, for appellee-receiver.

## OPINION

SANDERS, Judge.

The pivotal question on this appeal is whether or not attorneys representing a sub-class of thirteen percent of the outstanding shares of stock of a defunct corporation should be allowed attorneys' fees and expenses out of the total common fund.

This case has its genesis back in 1939, when the charter of Elk Valley Coal and Iron Company [Elk Valley], a former Tennessee corporation, was revoked for non-payment of taxes. At that time Elk Valley, a family corporation, along with Lendon Baird, Z. D. Baird and Winston Baird, owned several thousand acres of land adjoining each other in Campbell County. The land was leased to various strip and deep coal mining and timber companies.

Lendon Baird became acting director of Elk Valley in 1946 and continued to run the affairs of the company under the corporate name of the defunct corporation. He also managed the affairs of the Z.D. and Winston Baird partnership along with his own properties. He had the most extensive knowledge of the property lines of the respective parties involved and collected and allocated proceeds from timber stumpage, royalties from coal being mined, etc., to each respective property. Over the years he continued to handle the affairs concerning the land usage and to pay monies to the respective parties.

Complications arose in 1976 when deep coal mining was begun beneath contiguous land of the parties. Until the amount of coal mined beneath each respective property was ascertained, no royalties were credited to any account, no tax returns were filed, and no proceeds were paid to any of the parties.

In 1979 Eleanor Baird Eblen, along with thirteen other shareholders of Elk Valley, filed suit seeking an accounting, an injunction compelling Lendon Baird to produce the company's records, damages, and attorneys' fees. [Shareholders suit]. As a result, Mr. Baird's deposition was taken. In it was revealed large amounts of money belonging to Elk Valley were being held in safe deposit boxes and checking accounts in his and his wife's names.

In January 1981 another suit was filed by Mrs. Jessie Wallace and seven other

heirs of the Z.D. Baird estate against Lendon and Juanita Baird and the Winston Baird estate seeking an accounting between the two estates. [Estate suit]. The same attorney filed both the shareholders suit and the estate suit and represented holders of approximately forty-seven percent of the outstanding shares of Elk Valley.

In early February a hearing was held to appoint a Special Master in both the estate suit and the shareholders suit. The Special Master was to assume control of all the bank accounts, safe deposit boxes, and monies and records held by Lendon and Juanita Baird and Elk Valley. The Chancellor ordered:

> That said special master shall be charged with the responsibility of ascertaining and performing an accounting to ascertain the funds due the plaintiffs and to perform any and all duties and discharge all other responsibilities as set forth by Rule 53.01—53.05 of the Tennessee Rules of Civil Procedure.... That the special master shall perform all tasks and acts necessary to resolve the issues in this cause as reasonably and expeditiously as possible.

On February 18, 1981, a Motion to Intervene in the shareholders suit was filed by the Appellants, Paul Montcastle and Mary Jarnigan Bradley, shareholders in Elk Valley. Subsequently, in the middle of March, two years after the original suit was filed, a complaint was filed by them against Lendon Baird and Juanita Baird, as a class action on behalf of all stockholders of Elk Valley. It sought appointment of a receiver, distribution of the assets of the defunct corporation, and attorneys' fees. [Class action].

In April the shareholders suit was consolidated with the estate suit. In June the class action suit was consolidated with the other two suits. In July Bryon Eblen, who had been appointed special master, and Joel Morton were appointed co-receivers of Elk Valley. At that time, however, the Special Master had marshalled all the assets of Elk Valley and had in his possession in excess of $900,000. The records and monies acquired by the special master were turned over to the co-receivers. By the same Order, the plaintiffs in the class action suit were allowed to maintain their action as a class action as "representatives of the sub-class consisting of all persons who own stock in Elk Valley Coal and Iron Company other than [the plaintiffs and defendants in the shareholders and estate suits]." Members of the class were given the right to be excluded from the sub-class. This sub-class represents holders of about thirteen percent of the outstanding shares of Elk Valley.

Approximately $919,000 was turned over to the co-receivers by the special master, along with records and information the special master had collected concerning assets and shareholders. The additional monies later acquired by the receiver was from interest, IRS refunds, and royalties from previously ascertained leases. There was no new identification of funds after the appointment of the receivers.

The attorneys in the class action suit filed this action seeking payment of their fees and expenses out of the common fund, rather than that portion of the fund allocable to the sub-class representing thirteen percent of the outstanding shares of Elk Valley. After the payment of the debts of the company there is approximately $700,000 available for distribution to the shareholders. All the other attorneys, representing holders of about 87% of the shares involved in these suits, have agreements with their clients concerning their fees. Although the attorneys bringing this appeal have been paid some $45,000 from funds of the sub-class, they now insist they should be paid an additional $200,000 from the common fund.

The Chancellor, in his opinion ordering the payment of Appellants' attorneys' fees to be made only out of the portion of the fund belonging to the holders of thirteen percent of the shares the Appellants represent, said:

> This Court cannot discern any valid reason to onerate individuals outside of the

sub-class with payment of the fees of Messrs. Davis and Coker. Although these attorneys have represented their clients zealously and with good effect, and although the other parties to the litigation indirectly benefited from their efforts, nevertheless neither Mr. Davis nor Mr. Coker did anything to identify, bring into being, or increase the assets that ultimately will be distributed to the owners of the outstanding stock of the corporation. Although Mr. Davis and Mr. Coker prevailed in their insistance for the appointment of a receiver over the initial objections of the other attorneys, that fact alone would not entitle them to a fee out of the common fund. The asset was already in existence and identified and was merely transferred into the custody of the receiver. In short, the request of Mr. Davis and Mr. Coker that their fee be paid from the common fund is denied.

Permission was granted by the trial court and by this court for Appellants, Paul Montcastle and Mary Jarnigan Bradley, as representatives of the sub-class, to appeal to this court in accordance with Rule 9, T.R.A.P., from the Order denying petition for payment of attorneys' fees and expenses to plaintiffs' attorneys out of the common funds. Although this suit is brought in the name of Carl Montcastle and Mary Jarnigan, the real parties in interest on this appeal are their attorneys, Maclin P. Davis, Jr. and Joseph G. Coker.

■ All the parties have placed before this court additional issues, other than the one certified by the trial court. To the extent the issues are broader, they cannot be considered.

Appellants aver that as a consequence of their filing the complaint and other pleadings various benefits inured to all shareholders, which included the appointment of a receiver of Elk Valley's assets totalling more than $1,362,000; sustaining of a class action suit in behalf of all stockholders of Elk Valley; a ruling by the court that because Elk Valley's charter had been revoked, it was no longer a legal entity, and

its stockholders were vested with title to its property; ordering of a method by which the stockholders could establish their ownership of stock; and the pro rata distribution of the assets. Appellants further aver that none of those aspects of relief was available to Appellees in the estate case and the shareholder case.

The Appellants request a fee of twenty-five percent of the recovery in this case or at least three times their fees and expenses of the attorneys [$62,601.97] on the basis of their customary hourly charges.

In reviewing the Chancellor's Order of July 22, 1981 we note the Chancellor granted permission for Appellants to maintain "their action ... as a class action." He did not convert all three suits to a class action. We also note in reviewing the record the Appellees prayed for general relief or other relief as the court deemed appropriate.

■ Ordinarily, in Tennessee one who does not employ an attorney is not required to pay the attorney even though benefits may inure to that person. The leading case in this jurisdiction on the issue before us is *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, (Tenn.1976). In that case the Supreme Court, speaking through Justice Brock, said:

> There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others.

*Id.* at 589.

*See also Hill v. Childress*, 18 Tenn. 514 (1837); *Moses v. Ocoee Bank*, 69 Tenn. 398 (1878); *Hume v. Commercial Bank*, 81 Tenn. 496 (1884); *Rogers v. O'Mary*, 95 Tenn. 514, 32 S.W. 462 (1895); *Southern v. Beeler*, 183 Tenn. 272, 195 S.W.2d 857 (1946); *State ex rel. Banks v. Taylor*, 199 Tenn. 507, 287 S.W.2d 83 (1956); *Mayfield v. McKnight*, 56 S.W. 42 (Tenn.Ch.App. 1899); *Draper v. Draper*, 24 Tenn.App. 548, 147 S.W.2d 759 (1941). The Appel-

lants' attorneys may have indirectly contributed benefits to all shareholders, but do not have a contract for payment of fees by them.

There are, of course, exceptions to the general rule. One of which is:

"[W]henever one person, having assumed the risks and expense of litigation, has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common. In that event, the expenses of the action are borne by each participant according to his interest."

*Travelers* at 589.

*See also Bristol-Goodson Electric Light & Power Co. v. Bristol Gas, Electric Light and Power Co.,* 99 Tenn. 371, 42 S.W. 19 (1897); *City of Bristol v. Bostwick,* 146 Tenn. 205, 240 S.W. 774 (1922); *Bird v. Collette,* 26 Tenn.App. 181, 168 S.W.2d 797 (1942); *Carmack v. Fidelity Bankers Trust Co.,* 180 Tenn. 571, 177 S.W.2d 351 (1944); *Pennington v. Divney,* 182 Tenn. 207, 185 S.W.2d 514 (1945); *Gilpin v. Burrage,* 188 Tenn. 80, 216 S.W.2d 732 (1949); *Fifth Third Co. v. Mooreland Estates Homeowners Ass'n,* 639 S.W.2d 292 (Tenn. App.1982); *Marshall v. Sevier County,* 639 S.W.2d 440 (Tenn.App.1982).

The Appellants argue the theories of the "fund doctrine" and "unjust enrichment" upon which the basis of fees being paid out of the total common fund are laid. The court in *Travelers Ins. Co.* at 589 found the " 'fund doctrine' was invented by courts of equity to prevent passive beneficiaries of the fund from being unjustly enriched. It is, therefore, never applied against persons who have employed counsel on their own account to represent their interests. *See Ensley v. Ensley,* 105 Tenn. 107, 58 S.W. 288 (1900); *City of Bristol v. Bostwick, supra; Cass v. Smith,* 146 Tenn. 218, 240 S.W. 778 (1921); *Leggett v. Missouri State Ins. Co.,* 342 S.W.2d 833 (Mo.1960). Thus, the right to employ counsel of one's own choosing is preserved." In the case at bar, a very large percentage of the parties already had attorneys representing them and zealously working in their behalf. We can-

not say they are passive beneficiaries and would be unjustly enriched.

After careful review of the voluminous record in the case at bar, we fail to find the Appellants were instrumental in ascertaining, obtaining, preserving, protecting or increasing the common fund. It was the Appellees who at their own risk and expense brought suit at a time when it was unknown if any, or how much, monies were to be had. They spent substantial amounts of effort, time and money in taking discovery and acquiring the monies.

■ The Appellees were the ones who petitioned the court to appoint the special master. He was given the authority to take control of the fund and did extensive work in acquiring them. The receiver himself in undisputed testimony admitted he discovered no new funds. The court already had control of the monies and records. The transfer of funds was between the special master and the co-receivers—both under the direction of the same court. From the record before us we are unable to find where Appellants' attorneys, even by their own testimony, participated in acquiring the common fund. There was no real increase of those funds subsequently as a result of the Appellants work. They were not instrumental in protecting those funds. Rather we find the Appellants are the ones who benefited from the efforts of Appellee's attorneys. It appears the Appellants by reading the pre trial depositions taken by Appellees' attorney learned of the substantial common fund and then proceeded to file suit. They did succeed in having a receiver appointed to disburse the funds, however, we do not find the estate itself benefited by the action.

For an attorney to be entitled to compensation out of a common fund, his services must have aided in creating, preserving, or protecting the fund; and the fact that the other members of the class were represented by their own counsel has in some cases been treated as a strong or fatal objection to the allowance of counsel fees out of the common

fund.... The mere fact that a complainant seeking an allowance of attorneys' fees may have been successful in the proceedings undertaken in behalf of the general class does not entitle him to an allowance, for it does not follow that the estate is benefited.

The rule has been stated that the cases supporting the authority of a court to allow attorney's fees and costs out of a fund being administered by the court all involve the exercise of that authority where the services have added to, preserved, or increased the amount being administered. A court is not empowered, in administering a fund under its control, to allow costs and attorney's fees, payable out of the fund, for services performed by one creditor in establishing that he and all other creditors of a certain class are entitled to share in the distribution of that fund.

20 Am.Jur.2d *Costs* § 86 (1965).

Appellants rely upon *Smith v. Haire,* 138 Tenn. 255, 197 S.W. 678 (1917) and *Carmack v. Fibelity Bankers and Trust Company,* 180 Tenn. 571, 177 S.W.2d 351 (1944), as supportive of their contention. We find their reliance upon these cases to be misplaced.

Though the right to charge counsel fees as costs out of the fund or estate in controversy, in a proper case, is well established, it is recognized that the practice of allowing such fees is subject to great abuse and should be exercised with the most jealous caution in regard to the rights of the litigants to avoid bringing the administration of justice into reproach.

20 Am.Jur.2d *Costs* § 83 (1965).

In the case at bar, we find it inappropriate in the interests of justice and the equities in this suit to award attorneys' fees to the Appellants' attorneys out of the common fund. It would serve to only decrease the recovery to the parties who originally took the risks and performed the work.

The issues are found in favor of the Appellees. The decree of the Chancellor is affirmed and the cost of this appeal together with the cost in the trial court are taxed to the Appellants. This case is remanded for such further proceedings as the Chancellor deems necessary.

FRANKS, J., and T. MACK BLACKBURN, Special Judge, concur.