IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

**MAX E. PASS, SR., as Administrator of the Estate of Max E. Pass, Jr., deceased, and SHIRLEY WILLIAMS, as Administratix of the Estate of Martha N. Pass, deceased, v. SHELBY AVIATION, INC.**

**Interlocutory Appeal from the Circuit Court for Shelby County**
**No. 91874-6 T.D.     D. J. Alissandratos, Chancellor, Sitting by Interchange**

---

**No. W1999-00018-COA-R9-CV - Decided April 13, 2000**

---

This is an interlocutory appeal in a breach of warranty case. The plaintiffs' decedents were killed in an airplane crash. The estates sued the aviation company that performed the annual inspection on the airplane, on a theory of breach of warranty. The trial court denied the defendant's motion to dismiss, holding that the transaction was subject to the warranty provisions of Article 2 of the Uniform Commercial Code. Permission for interlocutory appeal was granted on this issue. We reverse, utilizing the predominant purpose test to determine if a mixed transaction of goods and services is subject to the Uniform Commercial Code, and holding that the transaction in this case was predominantly the provision of a service, not subject to the warranty provisions of the UCC.

**Tenn. R. App. P. 9; Judgment of the Circuit Court is Reversed and Remanded.**

JUDGE HOLLY K. LILLARD delivered the opinion of the court, in which JUDGE ALAN E. HIGHERS and JUDGE DAVID R. FARMER joined.

R. Alan Pritchard, Memphis, Tennessee, for the appellant, Shelby Aviation, Inc.

Gary K. Smith and Bryant C. Witt, Memphis, Tennessee, for the appellees, Max E. Pass, Sr. and Shirley Williams.

**OPINION**

This breach of warranty case arises out of the crash of a single engine Piper airplane owned and piloted by Max E. Pass, Jr. ("Mr. Pass"). On April 15, 1994, Mr. Pass and his wife, Martha N. Pass ("Mrs. Pass"), departed in the aircraft from Plant City, Florida, bound for Clarksville, Tennessee. Somewhere over Alabama the couple flew into turbulence. Mr. Pass lost control of the aircraft, and the plane crashed to the ground outside of Opelika, Alabama. Neither Mr. nor Mrs. Pass survived the crash.

The Defendant/Appellant in this case, Shelby Aviation, Inc. ("Shelby Aviation"), is a fixed base operator that services aircraft at Charles Baker Airport in Millington, Tennessee. On December

29, 1993, approximately four and a half months prior to the flight in which he was killed, Mr. Pass took his airplane to Shelby Aviation for inspection and service. In servicing the aircraft, Shelby Aviation replaced both rear wing attach point brackets (also called "attach point fittings") on the plane.

Three and one half years after the crash, Max E. Pass, Sr., father of Max Pass, Jr. and administrator of his estate, and Shirley Williams, mother of Martha N. Pass and administratrix of her estate, filed suit against Shelby Aviation. The lawsuit alleged that the rear wing attach point brackets sold and installed by Shelby Aviation were defective because they lacked the bolts necessary to secure them to the airplane. The Plaintiffs asserted claims against the Defendant for breach of common law warranty, and for breach of express and implied warranties under Article 2 of the Uniform Commercial Code ("UCC"), which governs the sale of goods.[1] The Plaintiffs' complaint alleged that the Defendant's employees "failed to provide and install the bolts necessary to secure the rear wing attach point brackets to the fuselage of the aircraft," that the missing bolts "resulted in a failure of both wings to withstand the torque routinely applied to an aircraft during turbulence," and that as consequence the right wing separated from the aircraft in flight, causing Mr. Pass to lose control and the airplane to crash.

On January 28, 1998, Shelby Aviation filed a motion to dismiss, under Tennessee Rule of Civil Procedure 12.06, asserting that the Plaintiffs failed to state a claim upon which relief can be granted. Shelby Aviation contended that the transaction with Max Pass, Jr. had been primarily for the sale of services, rather than of goods, and that consequently the transaction was not covered by Article 2 of the Uniform Commercial Code. Shelby Aviation further contended that all common law warranties had been subsumed into the UCC upon its adoption in Tennessee.

After the Plaintiffs filed their response to its motion to dismiss, Shelby Aviation filed a reply to the Plaintiffs' response, which included the affidavit of Shelby Aviation president, Joe McElmurray ("McElmurray"). In this affidavit, McElmurray stated that Mr. Pass had brought his plane to Shelby Aviation for an annual inspection, which was required by regulations of the Federal Aviation Administration; that all parts replaced on the plane were installed pursuant to the requirements of the annual inspection; and that the parts sold had not come from stock maintained by Shelby Aviation but instead had been ordered specifically for Mr. Pass' airplane.

On September 28, 1998, the trial court denied Shelby Aviation's motion to dismiss. On October 21, 1998, Shelby Aviation filed a motion for permission to file an interlocutory appeal of the trial court's denial of its motion to dismiss. On January 28, 1999, the trial court issued an order granting Shelby Aviation's motion for permission to file an interlocutory appeal. The trial court's order states, in relevant part:

---

[1] The statute of limitations for bringing an action for breach of a contract for sale under Article 2 of the UCC is four years from the date the cause of action accrues. Tenn. Code Ann. § 47-2-725 (1). A cause of action accrues when the breach occurs, and a breach of warranty occurs when tender of delivery is made. Tenn. Code Ann. § 47-2-725 (2).

The transaction between Mr. Pass and Shelby Aviation involved both the rendering of services and the sale of goods. Plaintiffs' Complaint was filed December 12, 1997, alleging breach of Article 2 warranties. In response, Defendant filed a Motion to Dismiss under Tenn. R. Civ. P. 12.02(6). Defendant contends that the transaction at issue is not covered by Article 2. This Court denied Defendant's Motion to Dismiss. The determinative issue and the issue to be appealed is whether the transaction between Mr. Pass and Shelby Aviation is governed by Article 2.

On March 9, 1999 this Court granted Defendant's application for interlocutory appeal.

On appeal, Shelby Aviation raises three issues: 1) whether the trial court erred in denying Shelby Aviation's motion to dismiss the Plaintiffs' claims for breach of express and implied warranties under the UCC on the basis that the mixed transaction between it and Max Pass, Jr. was not governed by the UCC under the predominant factor test; 2) whether the trial court erred in denying Shelby Aviation's motion to dismiss the Plaintiffs' claim for breach of common law warranty on the basis that such warranty was subsumed into Article 2 of the Uniform Commercial Code upon Tennessee's adoption of the UCC; and 3) whether the trial court erred in denying Shelby Aviation's motion to dismiss the Plaintiffs' claims for breach of implied and express warranties under Article 2 of the UCC on the basis that such warranties were effectively disclaimed by Shelby Aviation.

Since the trial court's decision to deny Shelby Aviation's motion to dismiss was predicated on not just on the pleadings, but the "entire record in the cause," we treat the trial court's denial of Shelby Aviation's motion as the denial of a motion for summary judgment. Tenn. R. Civ. P. 12.02; *See Adams TV of Memphis v. ComCorp of Tenn.*, 969 S.W.2d 917, 920 (Tenn. Ct. App. 1997)(motion to dismiss converted to motion for summary judgment when trial judge considered matters outside the pleadings). A motion for summary judgment is appropriately granted only upon a showing that there are no genuine issues of material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *Id.* Therefore, our review of the trial court's denial of Shelby Aviation's motion for summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Shelby Aviation first argues that it is entitled to judgment as a matter of law on the Plaintiffs' claims for breach of the express and implied warranties of Article 2 of the UCC because the transaction between it and Max Pass, Jr. was not subject to Article 2. Shelby Aviation contends that the contract between it and Max Pass was one predominantly for service, rather than the sale of goods, and as such, falls outside of the UCC. The Plaintiffs assert that the contract was predominantly for the sale of goods, and therefore subject to the express and implied warranties on the sale of goods provided by Article 2 of the UCC.

Article 2 of the Uniform Commercial Code, adopted by Tennessee, governs the sale of goods. Many contracts, however, like the one at bar, involve a mixture of both goods and services. The problem in such "mixed" transactions is to determine whether Article 2 governs the contract. Most jurisdictions follow one of two different approaches to address the problem. *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 622 (Mich. 1992). The first approach, sometimes called the "gravamen test," looks to that portion of the transaction upon which the complaint is based, to determine if it involved goods or services. *In re Trailer and Plumbing Supplies*, 578 A.2d 343, 345 (N.H. 1990); *Anthony Pools v. Sheenan*, 455 A.2d 434, 441 (Md. 1983). The other approach, known as the "predominant factor" or "predominant purpose test," looks at the transaction as a whole to determine whether its predominant purpose was the sale of goods or the provision of a service. *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 554 (Ind. 1993). In *Hudson v. Town and Country True Value Hardware*, 666 S.W.2d 51 (Tenn. Ct. App. 1984), a mixed transaction involving a contract for the sale of both goods and real estate, Tennessee elected to follow the predominant factor approach, finding it "preferable to adopt a test that views the transaction as a whole." *Id.* at 54.

The predominant factor test, as applied to a mixed transaction of goods and services, was described by the Eighth Circuit Court of Appeals in *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974):

> The test for inclusion or exclusion [in the U.C.C.] is not whether they [contracts] are mixed, but granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of services with goods incidentally involved (e.g. contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

*Id.* at 960.

Under the predominant factor test, the transaction between Shelby Aviation and Mr. Pass is examined to determine whether its predominant purpose was the sale of goods or the sale of services. If it was predominantly a contract for the sale of goods, it falls under the UCC, and the warranty provisions of Article 2 apply. If it was predominantly a contract for service, it falls outside the UCC, and the warranty provisions of Article 2 are inapplicable.

In order to determine whether the predominant purpose of a mixed transaction is the sale of goods or the provision of a service, we examine the language of the parties' contract, the nature of the business of the supplier of the goods and services, the reason the parties entered into the contract (i.e. what each bargained to receive), and the respective amounts charged under the contract for goods and for services. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 530-31 (7th Cir. 1999)(citing *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 555 (Ind. 1993)); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 460 (4th Cir. 1983). None of these factors alone is dispositive. *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 1330 (11th Cir. 1998). The party seeking application of the UCC bears the burden of proof to show that the predominant purpose of the contract was the sale of goods. *Insul-Mark*, 612

N.E.2d at 555; *Northwestern Equipment, Inc. v. Cudmore*, 312 N.W.2d 347, 351 (N.D. 1981). The Indiana Supreme Court describes the analysis:

> To determine whether the predominant thrust of a mixed contract is to provide services or goods, one looks first to the language of the contract, in light of the situation of the parties and the surrounding circumstances. Specifically one looks to the terms describing the performance of the parties, and the words used to describe the relationship between the parties.
>
> Beyond the contractual terms themselves, one looks to the circumstances of the parties, and the primary reason they entered into the contract. One also considers the final product the purchaser bargained to receive, and whether it may be described as a good or a service.
>
> Finally, one examines the costs involved for the goods and services, and whether the purchaser was charged only for a good, or a price based on both goods and services. If the cost of the goods is but a small portion of the overall contract price, such fact would increase the likelihood that the services portion predominates.

*Insul-Mark*, 612 N.E.2d at 555 (citations omitted).

In this case, Shelby Aviation argues that the predominant factor, thrust and purpose of its transaction with Mr. Pass was the sale of services, with the sale of goods incidentally involved. Shelby Aviation notes the language in the invoice, which refers to the plane being brought in for "repair" and "100 hour inspection." Shelby Aviation also observes that the nature of its business is primarily service. The Plaintiffs argue that the predominant factor was the sale of goods. In analyzing the costs of the goods and services, the Plaintiffs argue that the cost to install the parts should be included within the cost of the parts. If it is, the Plaintiffs assert that 75% of the total amount charged by Shelby Aviation was for the sale of goods.

The written document evidencing the transaction is the invoice prepared by Shelby Aviation. The invoice is preprinted with a handwritten description of repairs performed and parts used. In the top left hand corner, blocked off from the rest of the writing, is a preprinted paragraph that states that the owner is authorizing "the following repair work to be done along with the necessary material." On the top right hand side, under a heading entitled "Description," the box stating "annual 100 hour periodic inspection" is checked. On the left side of the invoice, beneath the authorization for repair, is a section entitled "Part number and description" with a handwritten list of the parts used and the amount charged for each. The right hand lower side of the page, under the heading "Service Description" lists the service performed and the amount charged. Finally, the bottom left corner of the page contains a block for "owner's signature" acknowledging "acceptance of repaired plane." As a whole, the invoice clearly emphasizes the repair and inspection aspect of the transaction, indicating that the predominant purpose was the sale of service, with the sale of goods incidental to that service.

We must also consider the nature of Shelby Aviation's business. The Plaintiffs' complaint asserts that Shelby Aviation is "in the business of maintenance, service, storage, and upkeep of aircraft." Shelby Aviation's president stated in his affidavit that the parts sold to Mr. Pass in conjunction with the service performed on his airplane were ordered specifically for his airplane. In addition, the invoice indicates that one part installed by the defendant, the right engine mag, was supplied by Mr. Pass. Shelby Aviation argues that if it were primarily in the business of selling parts, rather than service, it would not have permitted a customer to supply his own part to be installed. Overall, the nature of Shelby Aviation's business appears to be service rather than the sale of parts.

It is also clear that Mr. Pass took the plane to Shelby Aviation primarily to have a service performed, i.e., the annual inspection. What the purchaser sought to procure when he entered into the contract is a strong indication of the predominant purpose of the contract. *See Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 147 (2nd Cir. 1981)("underlying nature of a hybrid transaction is determined by reference to the purpose with which the customer contracted with the defendant"); *Northwestern Equipment Inc. v. Cudmore*, 312 N.W.2d 347, 349 (N. D. 1981)("Bonebrake test looks to the predominant purpose or thrust of the contract as it would exist in the minds of reasonable parties"). In *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 622 (Mich. 1992), the Michigan Supreme Court described its analysis of the purpose of the parties' dealings:

> If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required. Conversely, if the purchaser's ultimate goal is to procure a service, the contract is not governed by the UCC, even though goods are incidentally required in the provision of this service.

*Id*. Thus, the "final product" Mr. Pass "bargained to receive" appears to be the annual inspection of his airplane. *Insul-Mark*, 612 N.E.2d at 555.

The last factor to be considered is the respective amounts charged under the contract for goods and services. By adding the labor charge to install the parts sold to the cost of the parts themselves, the Plaintiffs calculate that 75% of the amount Shelby Aviation charged is attributable to the sale of goods rather than service. The Plaintiffs cite no case law in support of this method of calculation. Indeed, at least one case appears to indicate that the cost of labor for installing parts would <u>not</u> be included in the cost of the goods for purpose of ascertaining the predominant purpose of the contract. *See Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 531 (7th Cir. 1999). If the cost of labor is not considered part of the cost of goods, the percentage of the invoice attributable to goods is 37%.[2]

Regardless of how the percentage of the cost of goods is calculated, viewing the transaction as a whole, we must conclude that the predominant purpose of the transaction was the provision of

---

[2] A tally of the separate charges on the invoice Shelby Aviation prepared for Max Pass, Jr. reveals that Mr. Pass was charged $654.37 for parts, and $1,132.50 for services. Plaintiffs point out that this does not add up to the total amount of the invoice, and that Shelby Aviation apparently overcharged Max Pass by $375 by adding the inspection charge twice when it tallied the total bill.

a service rather than the sale of goods. The language of the invoice, the nature of the defendant's business, and the purpose for which Max Pass took his airplane to Shelby Aviation all indicate that service was the predominant factor in the transaction. Even where the cost of goods exceed the cost of the services, the predominant purpose of the contract may still be deemed the provision of service where the other factors support such a finding. *See Northwestern Equipment, Inc. v. Cudmore*, 312 N.W.2d 347, 351 (N.D. 1981). Therefore, we hold that the transaction between Shelby Aviation and Max Pass, Jr. was predominantly a contract for service, with the sale of goods incidentally involved. As such, it is not subject to the warranty provisions of Article 2 of the UCC. Shelby Aviation is entitled to judgment as a matter of law on the Plaintiffs' UCC breach of warranty claims.

Shelby Aviation also argues on appeal that the trial court erred in failing to grant Shelby Aviation's motion for summary judgment on the Plaintiffs' claim for breach of common law warranty, on the basis that all common law warranty claims were subsumed into the UCC upon its adoption in Tennessee. In addition, Shelby Aviation asserts that the trial court erred in failing to grant Shelby Aviation's motion to dismiss on the basis that Shelby Aviation disclaimed all warranties. However, the trial court's order granting the Defendant's motion for permission to file an interlocutory appeal clearly states that "the determinative issue and the issue to be appealed is whether the transaction between Mr. Pass and Shelby Aviation is governed by Article 2," which is addressed above. Consequently, we decline to consider issues beyond the scope of the issue certified for interlocutory appeal by the trial court. *See Milligan v. George*, No. 01A01-9609-CH-00406, 1997 WL 39138, at * 3 (Tenn. Ct. App. July 9, 1997)(scope of interlocutory appeal is restricted to issues certified by the trial court and accepted by appellate court); *See also Montcastle v. Baird*, 723 S.W.2d 119, 122 (Tenn. Ct. App. 1986).

The decision of the trial court denying Shelby Aviation's motion for summary judgment on the UCC breach of warranty claims is reversed, and the case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are equally taxed to Appellees, Max E. Pass, Sr. and Shirley Williams, for which execution may issue, if necessary.

> HOLLY KIRBY LILLARD, J.
> ALAN E. HIGHERS, J.
> DAVID R. FARMER, J.